**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NATIONWIDE PROPERTY &      )
CASUALTY INSURANCE CO., as subrogee   )   2:18-cv-01458-RJC
of, Gregory Beaver d/b/a/ Beaver's Tire   )
Service, and GREGORY BEAVER, d/b/a/   )
Beaver's Tire Center,                  )   Judge Robert J. Colville
                                       )
          Plaintiffs,              )
                                       )
       vs.                    )
                                       )
ROCKFORD COMMERCIAL         )
WAREHOUSE, INC. d/b/a ROCKFORD   )
CONSUMER PRODUCTS, CARKU     )
TECHNOLOGY, LLC, and SHENZHEN   )
CARKU TECHNOLOGY CO., LTD.,    )
                                       )
         Defendants,           )

## OPINION

Robert J. Colville, United States District Court Judge

      Before the Court are Renewed Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 41 and 46) filed by Defendant Rockford Commercial Warehouse, Inc. ("Rockford") and Defendant Shenzhen Carku Technology Co. Ltd. ("Shenzhen Carku"). In response to these Motions, Plaintiffs seek transfer of this action to the United States District Court for the Northern District of Illinois, which they assert has personal jurisdiction over all Defendants. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss 3, ECF No. 48. This matter has been fully briefed and is now ripe for consideration.

## I.      Factual Background & Procedural History

This action arises out of a fire that occurred at Plaintiff Gregory Beaver's automotive repair shop, Beaver's Tire Service, located at 8465 State Route 22, New Alexandria, Pennsylvania. Am. Compl. ¶¶ 13, 18, ECF No. 4. At all material times, Plaintiff Nationwide Property and Casualty Insurance insured Beaver's Tire Service. *Id.* at ¶14. Plaintiffs Nationwide Property and Casualty Insurance and Gregory Beaver (collectively, "Plaintiffs") allege that the fire at issue was caused by a jump starter (the "Jump Starter"), and specifically a Rockford Consumer Products Pocket Power Jump Starter Model No.: RFDPPJS2976DLX. Am. Compl. ¶¶ 16, 19, ECF No. 4. Plaintiffs allege that the Jump Starter was manufactured, designed, distributed, marketed, sold, and/or assembled by Defendants Rockford, Shenzhen Carku, and/or Carku Technology, LLC ("Carku, LLC"). Am. Compl. ¶ 17, ECF No. 4. Plaintiffs have clarified their allegations in stating that discovery has revealed that the Jump Starter was manufactured by Shenzhen Carku, and was shipped to and then distributed by Rockford. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss 2, ECF No. 48. Plaintiffs aver that the Jump Starter was defective and dangerous, and assert claims against Defendants sounding in negligence and strict liability. Am. Compl. ¶¶ 25-36.

Plaintiffs filed their First Amended Complaint (ECF No. 4) on November 13, 2018. Rockford filed an Answer to Plaintiffs' Amended Complaint (ECF No. 11) on December 14, 2018, and Shenzhen Carku filed an Answer to Plaintiffs' Amended Complaint (ECF No. 19) on April 15, 2019. Rockford and Shenzhen Carku also previously filed materially similar Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 27 and 32).[1] In response to these Motions,

---

[1] The Answer (ECF No. 19) and Motion to Dismiss (ECF No. 32) filed on behalf of Shenzhen Carku were also purportedly filed on behalf of Carku, LLC. The Court notes, however, that counsel for Shenzhen Carku filed Motions to Withdraw as Carku, LLC's counsel in which counsel averred that: 1) Carku, LLC is dissolved; 2) while the insurance carrier that had retained counsel initially stated that both Carku, LLC and Shenzhen Carku were covered under the applicable policy, only Shenzhen Carku is in fact covered under the policy; 3) Shenzhen Carku has no business relationship with Carku, LLC; and 4) while counsel has been in contact with their client Shenzhen Carku, counsel has had no contact with a representative of Carku, LLC. Mot. to Withdraw ¶¶ 2, 4, 6, 8, 9, 11-14, ECF Nos.

Plaintiffs requested an opportunity to conduct jurisdictional discovery, and alternately moved for transfer of this action to the United States District Court for the Northern District of Illinois. Pls.' Resp. to Mot. to Dismiss 1, ECF No. 35. On July 18, 2019, the Court denied Defendants' Motions to Dismiss (ECF Nos. 27 and 32) without prejudice, and granted Plaintiffs' Motion for Jurisdictional Discovery. Order, ECF No. 37.

Following the period of jurisdictional discovery permitted by the Court's July 18, 2019 Order (ECF No. 37), Rockford and Shenzhen Carku each filed a Renewed Motion to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 41 and 46). Rockford and Shenzhen Carku argue that this Court lacks personal jurisdiction over any Defendant in this matter. Plaintiffs filed a "Response to Defendants' Renewed Motions to Dismiss, and Plaintiffs' Request to Transfer this Matter to the United States District Court for the Northern District of Illinois" (ECF No. 48) on November 19, 2019. Plaintiffs oppose dismissal of this action, but do not advance any argument as to why this Court has personal jurisdiction over Defendants. Rather, Plaintiffs renew their request that this Court transfer this matter to the United States District Court for the Northern District of Illinois, which Plaintiffs assert has personal jurisdiction over all Defendants. Rockford filed a Reply in Support of its Renewed Motion (ECF No. 49) on November 22, 2019. Rockford does not oppose transfer to the Northern District of Illinois, but argues that any such transfer may only be effected pursuant to 28 U.S.C. § 1631. Rockford's Reply in Supp. 1, ECF No. 49. Shenzhen Carku filed a Reply in Support of its Renewed Motion on November 25, 2019. Shenzhen Carku opposes transfer to the Northern District of Illinois, and argues that the United

---

38, 39. Counsel were permitted to withdraw on August 26, 2019. Order, ECF No. 40. Carku, LLC is currently unrepresented, and, in light of the representations set forth above, may not have appeared before this Court in any fashion to date.

States District Court for the Northern District of Illinois does not have personal jurisdiction over Shenzhen Carku. Reply in Supp. 1-3, ECF No. 50.

## II. Legal Standard

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992)). Once a defendant has properly raised a jurisdictional defense, however, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990) (per curiam). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir.1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania

4

long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas*, 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

## III.    Discussion

Initially, Plaintiffs have seemingly abandoned any argument that this Court may exercise personal jurisdiction over any Defendant in this matter. Plaintiffs' Response to Defendants' Renewed Motions to Dismiss, and Plaintiffs' Request to Transfer this Matter to the United States District Court for the Northern District of Illinois (ECF No. 48) advances no argument and introduces no evidence to support this Court's exercise of personal jurisdiction over any Defendant, but rather opines that Defendants are subject to personal jurisdiction in the Northern District of Illinois. Because Rockford and Shenzhen Carku have raised jurisdictional defenses, Plaintiffs' bear the burden of establishing a prima facie case of personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990) (per curiam). In requesting to conduct jurisdictional discovery, Plaintiffs explained:

> Here, whether there is specific jurisdiction over the defendants will depend on their business activities relating to the Commonwealth of Pennsylvania. Specifically, those activities that caused and/or allowed the jump starter to be shipped to and sold in Pennsylvania. This will involve discovery of the bills of lading, purchase orders, invoices, dealings, marketing materials, and contracts with any third party distributors and/or purchasers doing business with the defendants.

5

> This type of discovery will be narrowly tailored and will reveal whether the defendants were aware their product was being shipped to and sold in Pennsylvania, whether they sought to do business in Pennsylvania, and whether they purposefully availed themselves of Pennsylvania and its marketplace.

Pls.' Resp. to Defs.' Mot. to Dismiss, and Pls' Req. for Limited Jurisdictional Disc. 4, ECF No. 35. Following the period of discovery permitted by Court Order (ECF No. 37), Plaintiffs have advanced no argument as to why this Court may exercise personal jurisdiction over Defendants, and instead request a transfer. Such can be considered a concession that the jurisdictional discovery at issue does not support the exercise of personal jurisdiction by this Court.[2] In any event, for the reasons discussed below, this Court finds that Plaintiffs have not established a prima facie case that this Court may exercise personal jurisdiction over any Defendant in the present matter.

### A. Personal Jurisdiction in Pennsylvania

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business. *BNSF Ry. Co.*, 137 S. Ct. at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another

---

[2] Plaintiffs' reliance on 28 U.S.C. §1631 further indicates that Plaintiffs concede that this Court lacks personal jurisdiction over Defendants.

forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).

Plaintiffs do not set forth allegations or evidence which establish a prima facie case that any Defendant is incorporated in Pennsylvania or has its principal place of business in Pennsylvania, or that any Defendant has systematic and continuous contacts with this forum. As such, there is no basis in the present matter to conclude that any of the foreign corporation Defendants are at home in this forum. Accordingly, this Court concludes that, in the present action, it does not have general personal jurisdiction over any Defendant.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.* However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir.2004). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction

rests" -- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *Id.* at 323.

Following review of the pleadings and the entire record in this matter, the Court finds that Plaintiffs have set forth no allegations and/or evidence with regard to Carku, LLC's contacts with this forum. Further, the exhibits attached to Plaintiffs' Response (ECF No. 48) are exclusively targeted toward establishing personal jurisdiction over Rockford and Shenzhen Carku in the Northern District of Illinois, and do not support a finding that any Defendant purposefully directed activities to the Commonwealth of Pennsylvania. The only allegation which arguably supports this Court's exercise of specific personal jurisdiction over Defendants is that the Jump Starter caused a fire in Pennsylvania. Plaintiffs' allegations, and the Exhibits attached to Plaintiffs' Response (ECF No. 48), however, do not sufficiently establish that the Jump Starter's eventual presence in this forum is a result of Defendants' purposeful activities specifically directed at Pennsylvania.[3] *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (explaining that the court could not link the events at issue in that case "to [defendant's] deliberate activities aimed at Pennsylvania.")). As such, the Court finds that Plaintiffs have not met their burden of setting forth a prima facie case that Defendants purposefully directed its activities at this forum. Accordingly, the Court finds that, in the present action, it does not have personal jurisdiction over any Defendant.

### B. Transfer

Plaintiffs request that this Court transfer this action to the United States District Court for the Northern District of Illinois. Pursuant to 28 U.S.C. § 1631:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or

---

[3] *See* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. A at 6; Ex. B at 6, ECF No. 48 (discovery responses indicating that neither Rockford nor Shenzhen Carku can explain how the Jump Starter eventually made its way to Pennsylvania).

> filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. The Third Circuit has explained that a district court which lacks personal jurisdiction over a defendant can transfer a case pursuant to 28 U.S.C. § 1631. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (citing *Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 218 n.9 (3d Cir. 2002)). Thus, transfer is appropriate in this action if: 1) the action originally could have been brought in the Northern District of Illinois; and 2) transfer is in the interest of justice. 28 U.S.C. § 1631.

### 1. Could this Action have been Brought in the Northern District of Illinois?

The requirement that the action originally could have been brought in the transferee district is satisfied if "venue is proper in the transferee district and if the transferee court could have properly exercised personal and subject matter jurisdiction over the action." *Covelman v. Hotel St. Regis*, No. 14-5757 (RBK/KMW), 2016 WL 762661, at *4 (D.N.J. Feb. 25, 2016) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). The party seeking transfer must establish a prima facie case of personal jurisdiction in the transferee forum to satisfy the requirement that the case could have been brought in the transferee forum. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir.1987)).

9

### a. Venue and Subject Matter Jurisdiction

Venue is proper over Shenzhen Carku, a company "organized and existing under the laws of the People's Republic of China,"[4] in any district court pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1356 (Fed. Cir. 2018) ("[V]enue laws (as opposed to requirements of personal jurisdiction) do not restrict the location of suits against alien defendants, unless Congress has specifically provided otherwise."). Rockford and Carku, LLC are corporations and "reside in any district where they are subject to personal jurisdiction." *Lehr v. Stryker Corp.*, No. CIV.A. 09-02989, 2010 WL 3069633, at *2 (E.D. Pa. Aug. 4, 2010) (citing 28 U.S.C. § 1391(c)). Thus, if the United States District Court for the Northern District of Illinois has personal jurisdiction over these Defendants, that forum is also a proper venue. Further, the United States District Court for the Northern District of Illinois would have original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332, as the amount in controversy in this matter exceeds $75,000 and this civil action is between citizens of different states. Am. Compl. ¶¶ 1-9; ECF No. 4. The Court must thus address the issue of whether the United States District Court for the Northern District of Illinois has personal jurisdiction over the Defendants in this matter.

### b. Personal Jurisdiction

"[T]he Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, so here the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (internal citation omitted). The key inquiry is "whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of

---

[4] Shenzhen Carku's Answer ¶ 8, ECF No. 19.

fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700-01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)).

Rockford is incorporated in Illinois and its principal place of business is 8105 Burden Road, Machesney Park, Illinois, 61115. Schuster Decl. Ex. A at 3-4, ECF No. 43. Accordingly, Rockford is at home in the Northern District of Illinois, and the United States District Court for the Northern District of Illinois has general personal jurisdiction over Rockford. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Further, Plaintiffs allege that Defendant Carku, LLC's state of incorporation was Illinois, and have advanced uncontroverted evidence which supports the same. Am. Compl. ¶ 6, ECF No. 4; Pls.' Resp. to Defs.' Mot. to Dismiss Ex. B, ECF No. 35. Accordingly, Plaintiffs have set forth a prima facie case that Carku, LLC is subject to general personal jurisdiction in the Northern District of Illinois. *See Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) ("[A]n 'inactive' corporation (that is, a corporation conducting no business activities) has no principal place of business, and is instead a citizen of its state of incorporation only.").

Plaintiffs argue that Shenzhen Carku is subject to specific personal jurisdiction in the Northern District of Illinois. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss 8, ECF No. 48. After review of the entire record in this matter, the Court finds the following facts to be relevant to the question of specific jurisdiction in the Northern District of Illinois:

The Jump Starter was a Rockford Consumer Products Pocket Power Jump Starter Model No.: RFDPPJS2976DLX.[5] Am. Compl. ¶¶ 16, 19, ECF No. 4. The line of jump starters at issue was first manufactured in 2012. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. A at 7, ECF No. 48. Shenzhen Carku is a corporation that is incorporated in and has its principal place of

---

[5] For ease of reference, the Court shall refer to this product line as the "line of jump starters at issue."

business in China. *Id.* at 3-4. Shenzhen Carku is in the business of manufacture and trade, and is the original equipment manufacturer of "Rockford jump starters." *Id.* at 4. Shenzhen Carku admits that it manufactured the line of jump starters at issue, but denies that it designed these jump starters. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. G at 4, ECF No. 48. At the times relevant to this lawsuit, Shenzhen Carku was a party to a "Sales Contract" ("the contract") with an entity identified in the contract as "STC Int'l, Shanghai, Sun Tech Limited" ("STC"),[6] wherein STC and Shenzhen Carku agreed that STC would distribute Shenzhen Carku's products to North America. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 1, ECF No. 48. Shenzhen Carku has described the relationship between Shenzhen Carku, STC, and Rockford as follows:

> It is admitted that Shenzhen Carku receives purchase orders from STC and ships the ordered product, that may include Rockford Consumer Products jump starters, to multiple distributors, including Sun Tech Limited in Hong Kong. Sun Tech Limited then ships the jump starters to Rockford Commercial Warehouse, Inc., who is a distributor of the jump starters in the United States.

Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. G at 4, ECF No. 48.

Shenzhen Carku does not sell jump starters to the United States market directly. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. A at 5, ECF No. 48. It has sold more than 5,000,000 jump starters since the beginning of 2012. *Id.* The contract between STC and Shenzhen Carku provides that Shenzhen Carku is the "automobile emergency jump starter manufacturer," and that STC is their "distributor to purchase [Shenzhen Carku's] manufactured product to directly or indirectly sell to [the] North American Market." Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 1, ECF No. 48. A graphic provided in the contract provides the following:

---

[6] Rockford refers to STC as "Super Test Corporation," while Shenzen Carku refers to STC as "Sun Tech Limited." *See* Rockford's Br. in Supp. 3, ECF No. 42; Shenzhen Carku's Br. in Supp. 4, ECF No. 47. While it is not clear where this disagreement over STC's name stems from, the parties' filings make clear that they are referring to the same entity, and that STC is a foreign distributor of jump starters.



Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 6, ECF No. 48. Notably, Rockford is explicitly identified in this image in the second tier of the distribution ladder, directly below only Shenzhen Carku, and on the same tier as STC, who is described as Rockford's "mother company in Hong Kong." *Id.* Rockford lists "STC International" and "Rockford Consumer Products" as two of its active "assumed names," according to the Illinois Secretary of State database. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. B at 2, ECF No. 48.

In support of its original Motion to Dismiss (ECF No. 32), Shenzhen Carku attached the Declaration of Michael Zhang, the General Manager of Shenzhen Carku, which provided:

> Shenzhen Carku's distributor for power starters, Rockford, is an independent corporation, incorporated in Illinois with its principal place of business in Illinois. Rockford is responsible for the distribution of Shenzhen Carku jump starters in the

United States and purchases the tools it sells from Shenzhen Carku in China via purchase order. Rockford is a party to this lawsuit.

Mot. to Dismiss Ex. C at ¶ 9, ECF No. 32.[7]

Rockford "forwarded" the jump starters to third parties at several locations within the United States at the direction of STC, though Rockford's representative could not recall the number of shipments Rockford made or the dates of such shipments. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. B at 5, ECF No. 48. Rockford forwarded some shipments to "Integrated Supply Network," a Florida company which Rockford avers has ten facilities in the United States, but none in Pennsylvania. *Id*. Rockford also forwarded jump starters to "Medco," a company it fails to identify other than by name. *Id*. Rockford asserts that it did not sell or make money on jump starters, but rather did so as a way of "helping" STC. *Id*.

Plaintiffs have submitted two invoices which evidence that two shipments of 10,0000 units each of the line of jump starters at issue were shipped from SLC to Rockford on May 2, 2014 and May 15, 2014 respectively. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. C. The May 15, 2014 invoice (No. ISN-SHA14012A to J 'CU') indicates that the shipment was sent from "Shenzhen, China," and the total price listed is $237,600.00. *Id*. The 10,000 total units are itemized into smaller quantity orders, all of which provide for a purchase price and are listed under the heading: "FOR ISN SHIPMENT." *Id*. The May 2, 2014 invoice (No. ISN-SHA14009A to J 'CU') indicates that the shipment was sent from "Shanghai, China," and the total price listed was $232,200.00. *Id*. The 10,000 total units are also itemized into smaller quantity orders, but the smaller quantity orders are not listed under a "FOR ISN SHIPMENT" heading. *Id*.

---

[7] Paragraph 11 clarifies that Shenzhen Carku sells the products to a distributor, presumably STC, who forwards the products to the United States. Mot. to Dismiss Ex. C at ¶ 11, ECF No. 32.

Rockford asserts that it responded to customer inquiries regarding lost and/or broken jump starters in only 2013 and 2014. *Id.* at 7. This assertion is seemingly belied by three email correspondences from May 2016 involving Adam Clayton, owner and president of Rockford, attached to Plaintiffs' Response (ECF No. 48) as Exhibits E, F, and J. These email exchanges are largely difficult to follow, as they involve numerous individuals, utilize several unexplained abbreviations, and mostly fail to identify the title or the employer of the individuals who sent the emails, as well as the title or employer of individuals to whom the substance of the emails refer. It is clear, however, that representatives from STC and Rockford discussed, via email, a May 2016 visit to Rockford by Leon, a Shenzhen Carku employee,[8] to address issues with products identified as "Rockford brand" and "RFD2976" at Rockford.[9] Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. E 3-4, ECF No. 48. Exhibit F sets forth Leon's itinerary. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. F, ECF No. 48. Exhibit J confirms that Leon performed work while at Rockford, apparently performing work on approximately 6,000-7,000 jump starters. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. J at 1, ECF No. 48.

Neither Rockford nor Shenzhen Carku is aware of the method by which the Jump Starter eventually arrived in Pennsylvania. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. A at 6; Ex. B at 6, ECF No. 48. Rockford is unaware whether the Jump Starter was one that it had forwarded, but asserts that Rockford never shipped jump starters directly to Pennsylvania, and that it did not

---

[8] The email address for "Leon," per Exhibit F, is sales02@carku.com. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. F, ECF No. 48. The email exchange attached to Plaintiffs' Response as Exhibit J clearly identifies Leon as a "Shenzhen Carku Technology Co.,Ltd" employee with the email address of sales02@carku.com. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. J, ECF No. 48. Shenzhen Carku also admits that a Shenzhen Carku representative visited Rockford in 2016 to provide "support service." Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. G at 6-7, ECF No. 48

[9] The Court notes again that the line of jump starters at issue is the Rockford Consumer Products Pocket Power Jump Starter Model No.: ***RFD*PPJS*2976*DLX.** Am. Compl. ¶¶ 16, 19, ECF No. 4

15

ship jump starters to the retailer from which Plaintiffs purportedly purchased the Jump Starter. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. B at 4, ECF No. 48.

The party seeking transfer must establish a prima facie case of personal jurisdiction in the transferee forum to satisfy the requirement that the case could have been brought in the transferee forum. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983)).

The Seventh Circuit has explained that "specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Tamburo*, 601 F.3d at 702 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Plaintiffs assert that the United States District Court for the Northern District of Illinois has specific personal jurisdiction over Shenzhen Carku under the stream of commerce theory of establishing personal jurisdiction. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss 9, ECF No. 48. Shenzhen Carku asserts that it does not directly sell or ship jump starters to any United States forum, and that it has no way of determining whether the Jump Starter at issue was sent to

16

Rockford. Shenzhen Carku's Br. in Supp. 13-14, ECF No. 47. Shenzhen Carku argues that it thus cannot be subject to specific personal jurisdiction in any United States forum related to the sale of the Jump Starter. *Id.* at 12. Shenzhen Carku further argues that Plaintiffs' alleged injury does not arise from Shenzhen Carku's purposefully directed direct activities towards Illinois. *Id*.

"If a defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). Courts utilize two different approaches, both of which originate from the United States Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102 (1987), in determining whether the exercise of personal jurisdiction under the stream of commerce theory is appropriate. Justice O'Connor's lead Opinion in *Asahi*, which was joined by three Justices, articulated the first approach:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987). Justice Brennan's concurring Opinion in *Asahi*, also joined by three Justices, explained that personal jurisdiction based upon a defendant's placement of a product into the stream of commerce is consistent with the Due Process Clause as long as the defendant "is aware that the final product is being marketed in the forum State." *Asahi Metal Indus. Co. v. Superior Court of California,*

17

*Solano Cty.*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring in part and concurring in judgment).

In *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), Justice Kennedy delivered a plurality Opinion which rejected Justice Brennan's approach, and explained that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). The United States District Court for the Northern District of Illinois has explained that, "[b]ecause a majority of the justices did not support Justice Kennedy's opinion, it is not controlling," and that "the Seventh Circuit has not taken a position on the appropriate stream-of-commerce test, except to the extent that the court in [*Dehmlow v. Austin Fireworks*, 963 F.2d 941 (7th Cir. 1992)] indicated that it would continue applying Justice Brennan's 'more permissive' stream-of-commerce approach until a majority of the Supreme Court rejected it." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2016 WL 5890022, at *3 (N.D. Ill. Oct. 10, 2016) (quoting *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992)).

In the present case, it makes no difference which stream of commerce approach the Court applies because the Court finds that Plaintiffs have satisfied their burden at this stage of the proceedings of establishing a prima facie case of Shenzhen Carku's minimum contacts with Illinois under the more stringent approach applied by Justice O'Connor in *Asahi*.

Plaintiffs have set forth evidence which shows that at least 20,000 units of the line of jump starters at issue were shipped to Rockford from STC over the course of a two-week period during the relevant timeframe. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. C. While Shenzhen

18

Carku is not directly referenced in the invoices at issue, the product referred to by the invoices is the exact Shenzhen Carku-manufactured line of jump starters at issue in this litigation, and is one of the products contemplated by the contract between Shenzhen Carku and STC. *See* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. C; Ex. D at 5, ECF No. 48. The shipment from STC to Rockford evidenced by the invoices is also the exact method of distribution prescribed by the contract between Shenzhen Carku and STC. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 6, ECF No. 48. At this stage of the proceedings, Plaintiffs are "entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal quotation marks omitted) (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983)). The Court is satisfied that these invoices evidence shipment of 20,000 units of the line of jump starters at issue to Illinois consistent with and pursuant to the contract between Shenzhen Carku and STC. Accordingly, Shenzhen Carku clearly placed the line of jump starters at issue into the stream of commerce, and 20,000 units of the line of jump starters were shipped to Illinois.

Under Justice O'Connor's approach in *Asahi*, additional conduct indicating an intent to serve the market in the forum state is required under the stream of commerce theory before a court may exercise personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987). In *Asahi*, Justice O'Connor explained:

> Assuming, arguendo, that respondents have established Asahi's awareness that some of the valves sold to Cheng Shin would be incorporated into tire tubes sold in California, respondents have not demonstrated any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. *It did not create, control, or employ the distribution system that brought its valves to California.*

19

*Asahi*, 480 U.S. at 112.  *See also Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983) ("[E]ven though Bunnan and United did not originate the distribution system and do not control it, they did place the flannel shirts in and move them along a stream of commerce destined for retail sale throughout the United States in Woolworth's retail stores.  In determining whether it is reasonable to hale Bunnan and United into court in Wisconsin, a critical fact is whether those defendants were aware of that distribution system.").

At all times relevant herein, Shenzhen Carku and STC were parties to a contract which provided that STC would distribute products manufactured by Shenzhen Carku, including the line of jump starters at issue, to North America.  Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 1; 5, ECF No. 48.  Rockford, an entity incorporated in Illinois and whose principal place of business is Illinois, is explicitly listed in the contract, directly under Shenzhen Carku, on the same distribution tier as STC, which is described as Rockford's "mother company in Hong Kong."  Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. D at 6, ECF No. 48.  *See also* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. G at 4, ECF No. 48 ("It is admitted that Shenzhen Carku receives purchase orders from STC and ships the ordered product, that may include Rockford Consumer Products jump starters, to multiple distributors, including [STC] in Hong Kong.  [STC] then ships the jump starters to [Rockford], who is a distributor of the jump starters in the United States.").

These facts demonstrate that Shenzhen Carku, in entering into a distribution contract with STC, created and directed the distribution system of the line of jump starters at issue specifically to Illinois.  Shenzhen Carku did not merely place the line of jump starters at issue into the stream of commerce with the awareness that the jump starters may eventually be sold in Illinois, but rather expressly permitted and purposefully directed distribution of such jump starters directly to the state of Illinois.  That Shenzhen Carku did not send the units themselves, but instead used a foreign

20

distributor, does not alter the fact that Shenzhen Carku is party to a contract that expressly directs shipment of the jump starter line at issue to Illinois. This Court finds that the creation by contract of the specific distribution system at issue constitutes additional conduct on the part of Shenzhen Carku indicating an intent to serve the market in Illinois.[10] In light of the foregoing, the Court finds that Plaintiffs have set forth a prima facie showing that Shenzhen Carku placed the line of jump starters at issue into the stream of commerce, and that Shenzhen Carku purposefully directed the distribution of those products to Illinois and availed itself of the privilege of conducting business in Illinois.

The Court must next consider whether the alleged injury arises out of Shenzhen Carku's forum-related activities. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Because Plaintiffs are not Illinois residents and because the alleged injury took place in Pennsylvania, Plaintiffs need to establish a link between the Jump Starter which caused the injury at issue and Shenzhen Carku's forum-related activities. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). Accordingly, Plaintiffs' argument that "each contact discussed above was directly related to Shenzhen Carku's sale of defective [j]ump [s]tarters, which is the issue giving rise to Plaintiffs' claims[,]" does not assert the kind of direct connection required by the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). In spite of this, Plaintiffs set forth sufficient allegations

---

[10] While the Court finds that this alone is sufficient to satisfy the "additional conduct" requirement, the Court also notes that a Shenzhen Carku representative traveled from China to Illinois to provide support service with respect to jump starters at Rockford in May 2016. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. E, F, and J; Ex. G at 6-7, ECF No. 48. This support service provided by Shenzhen Carku for the line of jump starters at issue in Illinois alone may not constitute sufficient additional conduct indicating an intent to serve the Illinois market, but certainly tends to indicate such an intent when considered in addition to the facts discussed above.

and evidence to establish a prima facie showing that this action arises out of Shenzhen Carku's Illinois contacts.

Plaintiffs allege that Rockford distributed the Jump Starter. Am. Compl. ¶ 17, ECF No. 4; Pls.' Resp. to Defs.' Renewed Mot. to Dismiss 2, ECF No. 48. Plaintiffs also set forth evidence that tends to establish that Rockford did, during the timeframe relevant to this case, distribute the line of jump starters at issue within the United States. Pls.' Resp. to Defs.' Renewed Mot. to Dismiss Ex. B at 5; Ex. G at 4, ECF No. 48. Further, there is no evidence before the Court that establishes that any other United States distribution channel, to the extent the same exists, is responsible for the Jump Starter's distribution. Accordingly, Plaintiffs have, at this preliminary stage of the proceedings, set forth a prima facie showing that their claims arise out of Shenzhen Carku's forum-related activities.

"The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). In considering whether the exercise of personal jurisdiction comports with fair play and substantial justice, "the following factors are relevant: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Tamburo*, 601 F.3d at 709 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "When minimum contacts have been established, often the interests of the plaintiff and the forum

in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987).

The Court acknowledges that traveling to the United States for the present case presents a burden to Shenzhen Carku as a foreign Defendant. The Court notes, however, that Shenzhen Carku has raised no argument with respect to the extent of this burden. The Court further notes that a Shenzhen Carku representative has traveled to Illinois to provide support with respect to the line of jump starters at issue, and Shenzhen Carku itself obtained an insurance policy in Illinois. Further, while Plaintiffs are not Illinois residents, Plaintiffs will be required to litigate in Illinois with respect to two other Defendants in this matter, and certainly have an interest in litigating all of their claims in one forum within the United States. Illinois also has an interest in applying its product liability laws. *See Kopfman v. Ensign Ribbon Burners, LLC*, 803 F. Supp. 2d 914, 919 (N.D. Ill. 2011). Accordingly, this Court finds that the exercise of personal jurisdiction by the United States District Court for the Northern District of Illinois over Shenzhen Carku comports with traditional notions of fair play and substantial justice.

For all of the reasons discussed above, this Court finds that Plaintiffs have met their burden of establishing a prima facie case that the United States District Court for the Northern District of Illinois has personal jurisdiction over Shenzhen Carku.[11] [12] Accordingly, transfer is appropriate if transfer is in the interest of justice. 28 U.S.C. § 1631.

---

[11] Because this Court finds that the United States District Court for the Northern District of Illinois has specific personal jurisdiction over Shenzhen Carku, the Court shall not address whether that Court may also exercise general personal jurisdiction over Shenzhen Carku. As such, the Court did not, in reaching its decision, consider the fact that Shenzhen Carku acquired an insurance policy in Illinois that lists an Illinois mailing address for Shenzhen Carku or the screenshot of Shenzhen Carku's purported website that features a United States office with an Illinois address. This Court finds that such facts are related to general, as opposed to specific, jurisdiction.

[12] The Court notes that the United States Court of Appeals for the Seventh Circuit has described the standard of review for a motion to dismiss challenging personal jurisdiction as follows:

> If personal jurisdiction is challenged under Rule 12(b)(2), the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which

### 2. Interest of Justice

The Court concludes that, in the present case, transfer is in the interest of justice. Should this Court transfer this action, Plaintiffs will not have to pay a filing fee in the Northern District of Illinois. Further, transfer will prevent the statute of limitations from resuming with respect to Plaintiffs' claims. These factors weigh in favor of transfer. *Covelman v. Hotel St. Regis*, No. 14-5757 (RBK/KMW), 2016 WL 762661, at *5 (D.N.J. Feb. 25, 2016) ("Doing so would prevent Plaintiffs from paying another filing fee, and it would prevent the statute of limitations from resuming. These factors indicate that a transfer is in the interest of justice."). Further, transfer, as opposed to dismissal, provides the most efficient path forward for this litigation, as dismissal would require Plaintiffs to refile their action in another forum and require the parties to refile their respective Answers. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (applying 28 U.S.C.A. § 1406(a), but employing a similar "interest of justice" analysis and explaining that "[t]he section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious

---

point the party asserting personal jurisdiction must prove what it alleged. Until such a hearing takes place, the party asserting personal jurisdiction need only make out a prima facie case of personal jurisdiction.

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citing *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir.2001); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1351, pp. 226–27 (2d ed. Supp.2001)). "When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Hyatt*, 302 F.3d at 713).

This Court has not conducted an evidentiary hearing, and the Court's review has been limited to whether the facts contained in the record establish a prima facie case of personal jurisdiction such that transfer is appropriate. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009) (the party seeking transfer must establish a prima facie case of personal jurisdiction in the transferee forum to satisfy the requirement that the case could have been brought in the transferee forum). The Court notes that it enters its Order in this matter without prejudice such that the transferee District Court can conduct an evidentiary hearing, if and when it determines the same is appropriate, to determine whether the higher standard of preponderance of the evidence is met. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." (citations omitted)).

and orderly adjudication of cases and controversies on their merits.").  Accordingly, the Court finds that transfer is in the interest of justice.

**IV.    Conclusion**

This Court finds that it does not have personal jurisdiction over any Defendant in this matter.  Plaintiffs have, however, met their burden of establishing a prima facie showing that the United States District Court for the Northern District of Illinois has personal jurisdiction over each of the Defendants.  Further, the United States District Court for the Northern District of Illinois has subject matter jurisdiction over Plaintiffs' claims, and is an appropriate venue.  Accordingly, the Court will deny the Renewed Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 41 and 46) filed by Rockford and Shenzhen Carku, and will grant Plaintiffs' Request to Transfer this Matter to the United States District Court for the Northern District of Illinois (ECF No. 48). The Court shall transfer this action to the Western Division, which is the home forum of Defendant Rockford.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Court Judge

DATED: April 28, 2020

cc/ecf: All counsel of record